**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| SHAFT JONES,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA, et al.,<br><br>        Defendants. | Civil Action<br>No. 18-13943 (RBK)(AMD)<br><br>**OPINION** |

**ROBERT B. KUGLER, U.S.D.J.**

      Plaintiff is a federal prisoner currently incarcerated at FCI Fort Dix, in Fort Dix, New Jersey. He is proceeding *pro se* with an Amended Complaint ("Complaint") raising claims pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971) and the Federal Tort Claims Act ("FTCA"). For the reasons stated below, the Court will allow the Complaint to proceed in part.

**I. BACKGROUND**

      The Court will construe the factual allegations of the Complaint as true for the purpose of this Opinion. Plaintiff names the following as Defendants: (1) the United States of America; (2) David Ortiz; (3) Unknown Assistant Warden; (4) Officer White; (5) Lt. Decker; (6) Officer Dillon; (7) Officer Harris; (8) S. Malloy; (9) R. Gilyard; (10) Unknown Health Services Administrator; (11) J. Wilks; (12) Ravi Sood; (13) Steven Esposito; (14) FCI Fort Dix Medical Director; (15) R. Newbury; (16) Unknown X-ray Technician; (17) Mr. Byrd; (18) Regional Director for FCI Fort Dix; (19) Hugh Hurwitz; (20) Mark Inch; (21) Mr. Kane; (22) Ms. Flowers; (23) Nicoletta Turner-Foster; (24) Unknown Nurse; and (25) Mr. Donepudi.

This case arises from Plaintiff's medical treatment while incarcerated at FCI Fort Dix. According to the Complaint, in the evening of February 19, 2017, Plaintiff reported to Defendant Harris that he was experiencing distressing symptoms, and Defendant Harris advised him to lay down and rest, and if the situation worsened, to let him know. After Defendant Harris completed his rounds, Plaintiff stated that his condition did not improve, and Defendant Harris notified additional officers of the situation.

Defendants Decker and White arrived, and it appeared to them that Plaintiff was experiencing "Bell's Palsy" of the face, and that if that were the case, the condition would improve with rest, and that they would make a sick call in the morning. Plaintiff advised the officers that he may have been suffering from something more serious and requested to see medical immediately, because he was experiencing numbness, tingling, and pain on the left side of his body, as well as abnormal gait and speech. Defendant White stated that no one was available at medical, and if the condition worsened, they would take him to medical in the morning.

The next morning, on February 20, 2017, Plaintiff's condition worsened, and he notified an officer who contacted medical. The officer reported that Plaintiff had been complaining all night of "numbness, on his left side, loss of equilibrium, problems with speech and concentration," and "appeared to be physically unbalanced." (ECF No. 9, at 15).

A healthcare provider, Defendant Esposito, then examined Plaintiff. The Complaint alleges that Defendant Esposito's notes portray a different version of events, but according to Plaintiff, he presented the symptoms above to Defendant Esposito. Thereafter, Defendant Esposito suggested that Plaintiff purchase ibuprofen, lay down and rest, and that he would order certain tests in the future.

On his walk back from the infirmary, Defendant Dillon observed Plaintiff, and the two had a dispute over Plaintiff's condition, and whether Plaintiff was "faking" it. Approximately three days later, on February 23, 2017, staff found Plaintiff face down on the floor, unresponsive, and rushed him to a hospital.

Staff at the hospital determined that Plaintiff had suffered multiple strokes, which left him paralyzed, unable to speak coherently, unable to focus, with loss of feeling, impaired memory, and abnormal gait. According to the Complaint, Plaintiff's symptoms during the prior three or four days, were clearly stroke warning signs.

After his hospitalization, medical professionals recommended that Plaintiff receive certain follow-up treatments. Plaintiff complains that Defendants did not provide him with those treatments, but, with the exception of Defendant Esposito, he makes no specific allegations as to any other Defendant regarding the follow-up treatments. Plaintiff also alleges that he filed a number of grievances regarding the above events, but that several of the Defendants improperly rejected or otherwise impeded his grievances.

Plaintiff filed the instant Complaint on or about September 26, 2019 and signed his notice of tort claim the day before, on September 25, 2019. Plaintiff now raises Eighth Amendment deliberate indifference claims, First Amendment right to petition claims, and Fifth Amendment due process claims against the Defendants under *Bivens*, as well as claims against the United States under the FTCA. The Complaint names all of the individual Defendants both in their official and individual capacities.

## II. STANDARD OF REVIEW

### A. Standard for *Sua Sponte* Dismissal

District courts must review complaints in which a prisoner files suit against "a governmental entity or officer or employee of a governmental entity." *See* 28 U.S.C. § 1915A(a). District courts may *sua sponte* dismiss any claim that is frivolous, is malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See id.* According to the Supreme Court's decision in *Ashcroft v. Iqbal*, "a pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

To survive *sua sponte* screening for failure to state a claim,[1] the complaint must allege "sufficient factual matter" to show that the claim is facially plausible. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the [alleged] misconduct." *Iqbal*, 556 U.S. at 678. Moreover, while courts liberally construe *pro se* pleadings, "*pro se* litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted).

---

[1] The Rule 12(b)(6) standard applies to dismissal of complaints pursuant to 28 U.S.C. § 1915A for failure to state a claim. *Malcomb v. McKean*, 535 F. App'x 184, 186 (3d Cir. 2013).

## B. *Bivens* Actions

Section 1983 of Title 42 created a remedy for monetary damages when a person acting under color of state law injures another, but "Congress did not create an analogous statute for federal officials. Indeed, in the 100 years leading up to *Bivens*, Congress did not provide a specific damages remedy for plaintiffs whose constitutional rights were violated by agents of the Federal Government." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1854 (2017).

The Supreme Court created an implied cause of action in *Bivens* when federal officers violated a person's Fourth Amendment rights. *Bivens*, 403 U.S. at 397. The Court extended the *Bivens* remedy twice more in: *Davis v. Passman*, 442 U.S. 228 (1979) (holding administrative assistant fired by Congressman had a *Bivens* remedy for her Fifth Amendment gender discrimination claim), and *Carlson v. Green*, 446 U.S. 14 (1980) (holding that prisoner's estate had a *Bivens* remedy against federal jailers for failure to treat his asthma under the Eighth Amendment). "These three cases—*Bivens, Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar*, 137 S. Ct. at 1855.

As is relevant in the present case, the Supreme Court has recognized an implied cause of action for Eighth Amendment inadequate medical care claims against a federal actor who was personally involved in the deprivation. *Carlson*, 446 U.S. at 19. With regard to Plaintiff's other constitutional claims, because he otherwise fails to state a claim, the Court need not address whether a plaintiff may pursue such claims in light of *Ziglar*.

In order to state a claim under *Bivens*, a plaintiff must allege: (1) a deprivation of a right secured by the Constitution or laws of the United States; and (2) that a person acting under color of federal law caused the deprivation. *See Couden v. Duffy*, 446 F.3d 483, 491 (3d Cir. 2006).

5

## III. DISCUSSION

### A. Sovereign Immunity and the Federal Tort Claims Act

As a preliminary matter, Plaintiff asserts *Bivens* claims against the United States, as well as the individual Defendants, both in their official and individual capacities. To be liable under *Bivens*, a defendant must be a "person." The Third Circuit has held in *Jaffee v. United States*, 592 F.2d 712, 717–18 (3d Cir. 1979), that sovereign immunity bars *Bivens* claims against the United States and its agents unless the United States explicitly waives its immunity, and accordingly, they are not "persons" amenable to suit under *Bivens*. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("An action against government officials in their official capacities constitutes an action against the United States; and *Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver.").

Here, the United States is immune from suit under *Bivens* because it has not explicitly waived sovereign immunity. Similarly, as the individual Defendants are employees or former employees of FCI Fort Dix, or the Federal Bureau of Prisons, or both, which are federal entities, they are immune from suit, at least in their official capacities. *See, e.g.*, *Webb v. Desan*, 250 F. App'x 468, 471 (3d Cir. 2007). Accordingly, the Court will dismiss with prejudice the *Bivens* claims against the United States and the individual Defendants, in their official capacities.

As to Plaintiff's FTCA claims, the "FTCA operates as a limited waiver of the United States's sovereign immunity." *White–Squire v. U.S. Postal Serv.*, 592 F.3d 453, 456 (3d Cir. 2010) (citation omitted). Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. An incarcerated FTCA plaintiff may sue only the United States, may seek only monetary damages, and may not recover for mental or emotional damages in the absence of physical injury. *See* 28 U.S.C. §

1346(b)(1)–(2); *CNA v. United States*, 535 F.3d 132, 138 n.2 (3d Cir. 2008) ("The Government is the only proper defendant in a case brought under the FTCA.").

      A plaintiff suing under the FTCA must present the offending agency with notice of the claim, including a "sum certain" demand for monetary damages. *See White–Squire*, 592 F.3d at 457. "Because the requirements of presentation and a demand for a sum certain are among the terms defining the United States's consent to be sued, they are jurisdictional." *Id.* An agency's final denial of the tort claim is a jurisdictional requirement. *Lightfoot v. United States*, 564 F.3d 625, 627 (3d Cir. 2009). These requirements cannot be waived. *See, e.g.*, *White–Squire*, 592 F.3d at 457.

      In the present case, Plaintiff appears to have signed his notice of tort claim on September 25, 2019, the day before he signed and dated the instant Complaint. (*Compare* ECF No. 9, at 30, *with*, ECF No. 9-1, at 1). As a result, Plaintiff could not have "received the necessary final denial of [his] administrative claim at the time" he filed this Complaint. *Wadhwa v. Nicholson*, 367 F. App'x 322, 324 (3d Cir. 2010). Accordingly, as Plaintiff fails "to satisfy a jurisdictional prerequisite to initiating a civil action under the FTCA," the Court will dismiss without prejudice his FTCA claims against the United States. *Id.*

### B. Supervisory Liability and Conclusory Allegations

      Next, as a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676; *Monell v. New York City Dept. Of Social Servs.,* 436 U.S. 658, 691 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the

nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

That said, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. Under the first approach, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). A policy generally involves a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." *Monell*, 436 U.S. at 690. A custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id*. at 691.

A plaintiff "must identify a custom or policy . . . and specify what exactly that custom or policy was" to satisfy the pleading standard. *Sheils v. Bucks Cty. Domestic Relations Section*, 921 F. Supp. 2d 396, 417 (E.D. Pa. 2013) (noting that although this standard typically applies to municipal entities, it "applies with equal force to supervisory liability claims premised on a 'policy, practice, or custom' theory" (citing *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)).

Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, assuming *arguendo* that there were violations of the Eighth Amendment, the Complaint fails to describe how Defendants, Ortiz, Unknown Assistant Warden, Unknown Health

Administrator, Sood, Wilks,[2] Fort Dix Medical Director, Unknown Nurse, Newbury, Unknown X-Ray Technician, Byrd, Hurwitz, Regional Director, Inch, Kane, Flowers, Turner-Foster, and Donepudi, factually violated Plaintiff's constitutional rights.

The Complaint appears to name most, if not all of these Defendants, in their supervisory capacity, but contains only bare conclusions against them. Moreover, there are *no allegations* as to Defendants Byrd, Unknown Nurse, and Newbury, in the body of the Complaint.

Plaintiff fails to allege, for example, that these Defendants created policies which left subordinates with no discretion other than to apply such policies, which in turn produced the alleged deprivation. Nor does Plaintiff allege facts to support the personal involvement of these Defendants, reciting only bare conclusions that they somehow violated Plaintiff's constitutional rights. Indeed, with the exception of Plaintiff's grievance related claims addressed in the following section, Plaintiff makes no specific factual allegations as to these Defendants, regarding his medical care in the entirety of the Complaint. Once again, however, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676.

Accordingly, the Court will disregard the Complaint's "naked assertions devoid of further factual enhancement" and "threadbare recitals of the elements of a cause of action, supported merely by conclusory statements," *Iqbal*, 556 U.S. at 678, and dismiss Plaintiff's Eighth Amendment claims against these Defendants, without prejudice, for failure to state a claim.

---

[2] Plaintiff does allege that Defendant Wilk "got very upset with plaintiff[,] yelling and saying mean things" in response to one of Plaintiff's administrative grievances, but verbal abuse, standing alone, does not violate the Constitution. *See, e.g.*, *Cortez v. Main*, No. 12-5659, 2013 WL 1815422, at *5 (D.N.J. Apr. 29, 2013) (listing cases).

### C. Claims Regarding Grievances

Next, Plaintiff contends that Defendants Ortiz, Unknown Assistant Warden, Malloy, Gilyard, Regional Director, Hurwitz, Inch, Kane, Flowers, and Wilks, improperly rejected his administrative grievances or otherwise impeded the administrative remedy system, in violation of his rights under the First and Fifth[3] Amendments.

Generally, the First Amendment confers a "right to petition the Government for redress of grievances," which traditionally involves access to the courts. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 294 n.17 (3d Cir. 2018); *Horsh v. Clark*, No. 17-316, 2019 WL 1243009, at *5 (W.D. Pa. Mar. 18, 2019). The First Amendment does not, however, "impose any affirmative obligation on the government to listen, to respond or . . . to recognize" a grievance. *E.g.*, *Smith v. Arkansas State Highway Emp., Local 1315*, 441 U.S. 463, 465 (1979); *see also Minnesota State Bd. Community Colleges v. Knight*, 465 U.S. 271, 285 (1984) ("Nothing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications.").

Similarly, there is no constitutional right to an "administrative grievance process or any particular relief . . . through such process." *Gittens v. Scholtz*, No. 18-2519, 2019 WL 3417091, at *4 (D.N.J. July 29, 2019)(quoting *Horsh*, 2019 WL 1243009, at *5 (citing *Jones v. N. C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 137–38 (1977))); *Bakhtiari v. Spaulding*, No. 17-16, 2017 WL 2778524, at *14 (M.D. Pa. June 27, 2017) ("Even if the prison provides for a grievance procedure . . . violations of those procedures do not give rise to a civil rights cause of action.").

---

[3] Plaintiff does not specifically raise claims under the Fifth Amendment, but broadly construing the Complaint, he may be attempting to raise due process claims under the Fifth Amendment.

10

These claims are equally meritless as due process challenges under the Fifth Amendment. As the Third Circuit has held, inmates have "no constitutional right to a grievance procedure" under the Fifth Amendment. *See, e.g.*, *Caldwell v. Beard*, 324 F. App'x 186, 189 (3d Cir. 2009). Consequently, although the rejections or other impediments to Plaintiff's grievances might have implicated other rights, they did not, standing alone, violate his First or Fifth Amendment rights.

Accordingly, the Court will dismiss with prejudice Plaintiff's First and Fifth Amendment grievance related claims as to Defendants Ortiz, Unknown Assistant Warden, Malloy, Gilyard, Regional Director, Hurwitz, Inch, Kane, Flowers, and Wilks.

### D. Remaining Claims

Turning then to Plaintiff's remaining claims against Defendants White, Dillon, Decker, Harris, and Esposito, in their individual capacity, the Court has screened these claims pursuant to 28 U.S.C. § 1915A to determine whether they are frivolous or malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from suit, and concludes that they do not warrant dismissal at this time. The Court will allow Plaintiff's Eighth Amendment claims and related state law claims against these Defendants to proceed, in their individual capacities.

## IV.  CONCLUSION

For all of the reasons set forth above, the Court will *only* allow Plaintiff's Eighth Amendment claims and related state law claims to proceed against Defendants White, Dillon, Decker, Harris, and Esposito, in their individual capacities.  The Court will dismiss with prejudice Plaintiff's grievance related claims under the First and Fifth Amendments, as well as all *Bivens* claims against the United States and the individual Defendants, in their official capacities.  Finally, the Court will dismiss the remainder of the Complaint without prejudice.  An appropriate Order follows.


Dated:  March  9,  2020                              s/Robert B. Kugler
                                                                              ROBERT B. KUGLER
                                                                              United States District Judge