UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

SHAFT JONES,

    Plaintiff,

v.

UNITED STATES OF AMERICA, et al.,

    Defendants.

Civ. No. 18-13943 (RBK) (AMD)

**OPINION**

**ROBERT B. KUGLER, U.S.D.J.**

## I.    INTRODUCTION

Plaintiff, Shaft Jones ("Plaintiff" or "Jones"), was formerly incarcerated at F.C.I. Fort Dix in Fort Dix, New Jersey. He is proceeding *pro se* with an amended civil rights complaint. (*See* Dkt. No. 9). On March 16, 2020, this Court screened the amended complaint and proceeded Plaintiff's Eighth Amendment deliberate indifference claims and related state law claims against Defendants White, Dillon, Decker, Harris and Esposito. (*See* Dkt. Nos. 11 & 12). Presently pending before this Court is Defendants' motion to dismiss the amended complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, for summary judgment pursuant to Federal Rule of Civil Procedure 56(a). Additionally, Defendants have filed a motion to seal certain records. For the following reasons, Defendants' motion to seal is granted and their motion to dismiss, or in the alternative for summary judgment, is denied without prejudice.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

The facts giving rise to Plaintiff's amended complaint were previously stated by this Court in its screening opinion as follows:

Plaintiff names the following as Defendants: (1) the United States of America; (2) David Ortiz; (3) Unknown Assistant Warden; (4) Officer White; (5) Lt. Decker; (6) Officer Dillon; (7) Officer Harris; (8) S. Malloy; (9) R. Gilyard; (10) Unknown Health Services Administrator; (11) J. Wilks; (12) Ravi Sood; (13) Steven Esposito; (14) FCI Fort Dix Medical Director; (15) R. Newbury; (16) Unknown X-ray Technician; (17) Mr. Byrd; (18) Regional Director for FCI Fort Dix; (19) Hugh Hurwitz; (20) Mark Inch; (21) Mr. Kane; (22) Ms. Flowers; (23) Nicoletta Turner-Foster; (24) Unknown Nurse; and (25) Mr. Donepudi.

This case arises from Plaintiff's medical treatment while incarcerated at FCI Fort Dix. According to the Complaint, in the evening of February 19, 2017, Plaintiff reported to Defendant Harris that he was experiencing distressing symptoms, and Defendant Harris advised him to lay down and rest, and if the situation worsened, to let him know. After Defendant Harris completed his rounds, Plaintiff stated that his condition did not improve, and Defendant Harris notified additional officers of the situation.

Defendants Decker and White arrived, and it appeared to them that Plaintiff was experiencing "Bell's Palsy" of the face, and that if that were the case, the condition would improve with rest, and that they would make a sick call in the morning. Plaintiff advised the officers that he may have been suffering from something more serious and requested to see medical immediately, because he was experiencing numbness, tingling, and pain on the left side of his body, as well as abnormal gait and speech. Defendant White stated that no one was available at medical, and if the condition worsened, they would take him to medical in the morning.
The next morning, on February 20, 2017, Plaintiff's condition worsened, and he notified an officer who contacted medical. The officer reported that Plaintiff had been complaining all night of "numbness, on his left side, loss of equilibrium, problems with speech and concentration," and "appeared to be physically unbalanced." (ECF No. 9, at 15).

A healthcare provider, Defendant Esposito, then examined Plaintiff. The Complaint alleges that Defendant Esposito's notes portray a different version of events, but according to Plaintiff, he presented the symptoms above to Defendant Esposito. Thereafter, Defendant Esposito suggested that Plaintiff purchase ibuprofen, lay down and rest, and that he would order certain tests in the future.

> On his walk back from the infirmary, Defendant Dillon observed Plaintiff, and the two had a dispute over Plaintiff's condition, and whether Plaintiff was "faking" it. Approximately three days later, on February 23, 2017, staff found Plaintiff face down on the floor, unresponsive, and rushed him to a hospital.
> Staff at the hospital determined that Plaintiff had suffered multiple strokes, which left him paralyzed, unable to speak coherently, unable to focus, with loss of feeling, impaired memory, and abnormal gait. According to the Complaint, Plaintiff's symptoms during the prior three or four days, were clearly stroke warning signs.
>
> After his hospitalization, medical professionals recommended that Plaintiff receive certain follow-up treatments. Plaintiff complains that Defendants did not provide him with those treatments, but, with the exception of Defendant Esposito, he makes no specific allegations as to any other Defendant regarding the follow-up treatments. Plaintiff also alleges that he filed a number of grievances regarding the above events, but that several of the Defendants improperly rejected or otherwise impeded his grievances.
>
> Plaintiff filed the instant Complaint on or about September 26, 2019 and signed his notice of tort claim the day before, on September 25, 2019. Plaintiff now raises Eighth Amendment deliberate indifference claims, First Amendment right to petition claims, and Fifth Amendment due process claims against the Defendants under *Bivens*, as well as claims against the United States under the FTCA. The Complaint names all of the individual Defendants both in their official and individual capacities.

(Dkt. No. 11 at 1-3). Plaintiff seeks monetary damages and physical therapy as relief in his amended complaint. (*See* Dkt. No. 9 at 26).

On March 16, 2020, this Court screened Plaintiff's amended complaint. (*See* Dkt. No. 11 & 12). The only claims permitted to proceed past screening were Plaintiff's Eighth Amendment and related state law claims against Defendants White, Dillon, Decker, Harris and Esposito.

On September 8, 2021, prior to filing an answer or any discovery taking place, Defendants filed the pending motion to dismiss or in the alternative motion for summary judgment. Defendants make three arguments in their motion. First, they argue Plaintiff failed to

3

exhaust his administrative remedies. Second, Defendants assert that Plaintiff's claims against the medical and non-medical Defendants should be dismissed or, alternatively, that they should be granted summary judgment because they were not deliberately indifferent to Plaintiff's serious medical needs. Finally, Defendants assert they are entitled to qualified immunity because their actions did not violate Plaintiff's constitutional rights.

Plaintiff did not file a response to Defendants' motion. Thereafter, this Court issued notice pursuant to *Paladino v. Newsome*, 885 F.3d 203 (3d Cir. 2018) that it intended to resolve any factual disputes based on Defendants' affirmative defense of Plaintiff's purported failure to exhaust administrative remedies. (*See* Dkt. No. 40). Defendants filed a response to the *Paladino* notice. (*See* Dkt. No. 42). Plaintiff did not.

### III.    LEGAL STANDARD

A. <u>Motion to Dismiss</u>

Federal Rule of Civil Procedure 12(b)(6) allows a court to dismiss an action for failure to state a claim upon which relief can be granted. When evaluating a motion to dismiss, "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

A court conducts a three-part analysis to make this determination. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the court must "tak[e] note of the

elements a plaintiff must plead to state a claim." *Id.* (quoting *Iqbal*, 556 U.S. at 675). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 131 (quoting *Iqbal*, 556 U.S. at 680). Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* Additionally, it is worth noting that "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *See Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

B.  Motion for Summary Judgment

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law" and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude the Court from granting a motion for summary judgment. *See id.*

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A party asserting that a fact [is not] genuinely disputed must support the assertion by ... citing to particular parts of materials in the record, including depositions, documents ..., affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). After the moving party adequately supports its motion,

the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *See Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50). "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

## IV. DISCUSSION

### A. Failure to Exhaust Administrative Remedies

Defendants' first argument is that Plaintiff failed to exhaust administrative remedies. The Prison Litigation Reform Act ("PLRA") states: "[n]o action shall be brought with respect to prison conditions under the section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is a mandatory prerequisite before a plaintiff files a civil rights action regarding prison conditions. *See Woodford v. Ngo,* 548 U.S. 81, 85 (2006) (citing *Booth v. Churner,* 532 U.S. 731, 739 (2001)). "The PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes[.]" *Porter v. Nussle,* 534 U.S. 516, 532 (2002) (citation omitted). A prisoner must exhaust administrative remedies even when the relief sought, such as

monetary damages, cannot be granted by the administrative process. *See Woodford,* 548 U.S. at 85 (citing *Booth,* 532 U.S. at 734).

To determine whether a prisoner has exhausted his administrative remedies, the Court looks to the administration's, in this case the Federal Bureau of Prisons ("BOP"), applicable grievance procedure and rules. *See Jones v. Bock,* 549 U.S. 199, 218 (2007) (stating that the procedural rules for exhausting administrative remedies are defined by the prison grievance process itself and that "[c]ompliance with the prison grievance procedures ... is all that is required by the PLRA to 'properly exhaust'"). The BOP's Administrative Remedy Program is a multi-tier process that allows "an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10. The inmate first must attempt to informally resolve his issue with the institutional staff. *See* 28 C.F.R. § 542.13(a). If informal resolution fails or is waived, the inmate then may submit a formal Administrative Remedy Request on the appropriate BP–9 form within twenty calendar days following the date for which the basis for the request occurred. *See* 28 C.F.R. § 542.14(a). If the inmate is unsatisfied with the warden's response to his Administrative Remedy Request, he may submit an appeal on the BP–10 form to the appropriate Regional Director within twenty calendar days of the date the warden signed the response. *See* 28 C.F.R. § 542.15(a). An inmate who is not satisfied with the Regional Director's response may appeal to the General Counsel on the appropriate BP–11 form within thirty calendar days of the date the Regional Director signed the response. *See id.* An inmate's appeal to the General Counsel is the final administrative appeal. *See id.*

The BOP's Administrative Remedy Procedure, 28 C.F.R. § 542.10 *et seq.* and its Program Statement 1330.13, *available at* http:// www.bop.gov/policy/progstate/1330_18.pdf (last visited May 24, 2022), do not provide meaningful guidance as to the level of specificity required in an

administrative remedy request except to note that "[t]he inmate shall place a single complaint or a reasonable number of closely related issues on the [administrative remedy] form." 28 C.F.R. § 542.14(c)(2). The Third Circuit has not addressed the issue of the level of specificity required, however, it has noted that "[t]he primary purpose of a grievance is to alert prison officials to a problem." *Williams v. Beard,* 482 F.3d 637, 640 (3d Cir. 2007). This language has led this and other courts to adopt a standard "that a grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought." *See Olivares v. United States,* No. 07–3476, 2010 WL 5251429, at *4 (D.N.J. Dec.16, 2010) (citing *Griffin v. Arpaio,* 557 F.3d 1117 (9th Cir.2009) (quoting *Strong v. David,* 297 F.3d 646, 650 (7th Cir.2002))); *see also Perez v. Turner,* No. 11–6833, 2013 WL 3216147, at *7 (D.N.J. June 25, 2013); *Nestor v. Dir. Ne. Region Bureau of Prisons,* No. 11–4683, 2012 WL 6691791, at *8 (D.N.J. Dec.20, 2012). This Court sees no reason to reject this methodology.

Plaintiff initially filed a BP-8 informal resolution form on or around March 3, 2017. (*See* Dkt. No. 9-1 at 3). On March 8, 2017, the BOP rejected Plaintiff's BP-8 form stating as follows:

> This is in response to your BP-8, dated March 3, 2017, in which you allege on February 19, 20, 23, 2017, you were denied emergency medical treatment from the staff of FCI Fort Dix as a result of this, you allege you passed out and had multiple strokes. After reviewing your medical record, there is no medical documentation indicating you reported to health Services or complained to Medical Staff of any medical complaint on February 19, 2017. The following day on February 20, 2017, you were seen and evaluated by the Duty PA for your complaints of pain to your legs and feet which you stated have been present for the past several months.
>
> On February 23, 2017, you were evaluated by the Paramedic and transferred to the local hospital to be evaluated for changes in your mental status which you were admitted for syncopal episode, later while hospitalized was diagnosed with embolic stroke.

> In review of your medical record, there is no evidence that indicate that you were denied emergency Medical.

(Dkt. No. 9-1 at 5). Plaintiff then filed a BP-9 grievance on March 10, 2017, which stated as follows:

> In respectful appeal to the findings of the Unit Team to which it stated that after reviewing my medical record that there was no medical documentation indicating that I reported to health services or complained to medical staff on February 19, 2017. This avers that this administrative has responded falsely and has now falsified government documents in order to not accept responsibility for failure to provide medical care, which in turn caused this movant to have multiple strokes. This movant is requesting that this administrative allow for an outside agency to investigate the patterns and practices of this medical department, and/or allow this movant to bring a civil claim against this institution and its staff for deliberate and callous indifference on the part of the official. [S]ee Rhodes v. Chapman, 452 U.S. 337, 101 S. Ct. 3408 (1981). Furthermore, this movant is requesting that this administration remove AHSA J. Wilk from his position over the Medical Department for violating § 3420.09(34) Falsification – under the Standards of Employee Conduct. This behavior needs a severe consequence given to each employee who violates the program statement in order to deter other employees from conducting the same behavior.

(Dkt. No. 9-1 at 6). On March 16, 2017, the BOP told Plaintiff his BP-9 form needed more specific information (such as his case number) so that his appeal could be considered.[1] (*See* Dkt. No. 34-10 at 2). The BOP stated Plaintiff could resubmit his BP-9 form within five days. (*See id.*).

Defendants state that Plaintiff resubmitted his BP-9 form on March 24, 2017. The BOP rejected that BP-9 form as untimely because it was not filed within five days of its March 16,

---

[1] Defendants state that the BOP's rejection occurred on March 15 or 16, 2017. The rejection notice has a typed date of March 15, 2017. However, the 5 on the 15th date is crossed out and replaced with a handwritten 6. Accordingly, for purposes of this opinion, this Court will use March 16, 2017 as the date of the BOP's rejection as Defendants have not come forward with anything concrete that Plaintiff received this notice on March 15th as opposed to March 16th.

2017 rejection notice. Defendants note, "Plaintiff continued to attempt to refile on all levels, but BOP staff never accepted the grievance due to the untimeliness of the initial re-filed grievance." (Dkt. No. 34-1 at 22).

According to Defendants, because Plaintiff did not comply with its directive to refile his BP-9 form within five days, this Court should determine that Plaintiff failed to exhaust his administrative remedies. Nevertheless, Plaintiff attached to his amended complaint a signed letter from BOP Counselor S. Malloy dated April 20, 2017 in which she states the following:

> Inmate Jones, Shaft Reg. No. 04688-027, BP-9 was rejected I do recall seeing the rejection notice between the dates of March 15 or 16; I do not recall the exact date. I attempted to have the IM wait for his Counselor to handle the situation. I called Unit Manager Gilyard to see if the 5 days to resubmit were business days, she replied "No it's not[.]" Jones decided to resubmit the BP-9[.] I immediately placed it into the UM mailbox. *It was not untimely*.

(Dkt. No. 9-1 at 10).

Assuming for purposes of this opinion *only* that Defendants *may* be entitled to relief on their lack of exhaustion argument under either a Rule 12(b)(6) motion to dismiss standard, or a Rule 56 motion for summary judgment standard, dismissal or judgment in Defendants' favor is not warranted at this time. There remain clear issues presented in the pleadings and relevant materials under the Rule 12(b)(6) standard and clear material issues of fact under the Rule 56 standard outstanding. Most notably, Counselor Malloy states in her letter that Plaintiff's resubmission was timely. As this letter was attached as an exhibit to the amended complaint, this letter certainly does not entitle Defendants to dismiss Plaintiff's complaint applying a motion to dismiss standard.

Nevertheless, Defendants alternatively assert they are entitled to summary judgment. Based on this record though, summary judgment based on a failure to exhaust is also not

appropriate at this time. Indeed, again assuming without deciding for purposes of this opinion *only* that Defendants would be entitled to relief because Plaintiff's amended BP-9 was untimely, Counselor Malloy's letter indicates there remain material issues of fact outstanding of when Plaintiff resubmitted his BP-9 form. Discovery, such as an affidavit or testimony from Malloy, will presumably help resolve this outstanding factual issue. Accordingly, applying either a motion to dismiss or summary judgment standard, this Court will not grant Defendants' motion on its failure to exhaust administrative remedies at this time.

B. <u>Merits/Qualified Immunity</u>

Defendants next assert their motion should be granted because they were not deliberately indifferent to Plaintiff's serious medical needs and/or because they are entitled to qualified immunity. For the following reasons, both arguments are premature based on the *specific circumstances* of this case.

> For the delay or denial of medical care to rise to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment, a prisoner must demonstrate "(1) that defendants were deliberately indifferent to [his] medical needs and (2) that those needs were serious." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999). Deliberate indifference requires proof that the official "knows of and disregards an excessive risk to inmate health or safety." *Natale v. Camden Cnty. Corr. Facility,* 318 F.3d 575, 582 (3d Cir. 2003) (quoting *Farmer v. Brennan,* 511 U.S. 825, 837 (1994)). We have found deliberate indifference where a prison official: "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a nonmedical reason; or (3) prevents a prisoner from receiving needed or recommended treatment." *Rouse,* 182 F.3d at 197. Deference is given to prison medical authorities in the diagnosis and treatment of patients, and courts "disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... (which) remains a question of sound professional judgment." *Inmates of Allegheny Cnty. Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979) (quoting *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)). Allegations of negligent treatment or

11

> medical malpractice do not trigger constitutional protections. *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976).

*Pierce v. Pitkins,* 520 F. App'x 64, 66 (3d Cir. 2013). Deliberate indifference can also be found "where the prison official persists in a course of treatment in the face of resultant pain and risk of permanent injury." *See McCluskey v. Vincent,* 505 F. App'x 199, 202 (3d Cir. 2012) (internal quotation marks and citation omitted). "A medical need is serious if it 'has been diagnosed by a physician as requiring treatment,' or if it 'is so obvious that a lay person would easily recognize the necessity for a doctor's attention.'" *See Mitchell v. Beard,* 492 F. App'x 230, 236 (3d Cir. 2012) (*quoting Atkinson v. Taylor*, 316 F.3d 257, 272-73 (3d Cir. 2003) (quoting *Monmouth Cnty. Inst. Inmates v. Lanzaro,* 834 F.2d 326, 347 (3d Cir. 1987))).

Defendants rely on prison records as well as Plaintiff's medical records in their motion which were not attached to the amended complaint. Thus, their arguments cannot be considered as part of a motion to dismiss. Accordingly, summary judgment is the proper standard to apply to Defendants' merit based argument.

Defendants assert they are entitled to summary judgment because Plaintiff has failed to show material issues of fact regarding whether they were deliberately indifferent to his serious medical needs. (*See* Dkt. No. 34-1 at 24-32). Because Defendants filed their motion relying on numerous documents prior to any discovery, this Court finds Plaintiff should at least be afforded the right to discovery in this case before ruling on the merits of Defendants motion for summary judgment. *See, e.g., Costlow v. United States*, 552 F.2d 560, 564 (3d Cir. 1977) (citation omitted) ("[W]here the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course."); *see also See Shelton v. Bledsoe*, 775 F.3d 554, 568 (3d Cir. 2015) ("If discovery is incomplete, a district court is rarely justified in granting summary judgment[.]"); *Scholar Intelligent Sols., Inc. v. N.J.*

*Eye Center, P.A.*, No. 13–0642, 2013 WL 2455959, at *2 (D.N.J. June 5, 2013) (summary judgment motion filed before discovery deemed premature).

Next, Defendants assert they are entitled to qualified immunity because Plaintiff has failed to allege a deprivation of his constitutional rights. "Qualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (internal citation and quotation marks omitted). The first prong of the analysis "asks whether the facts, [t]aken in the light most favorable to the party asserting the injury, ... show the officer's conduct violated a [federal] right [.]" *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (internal quotation marks and citations omitted) (alterations and omissions in original). "The second prong of the qualified-immunity analysis asks whether the right in question was 'clearly established' at the time of the violation." *Id.* at 656 (internal citation and quotation marks omitted).

Defendants assert that they are entitled to qualified immunity under the first prong of the qualified immunity analysis, namely that Plaintiff has failed to show that their actions violated Plaintiff's constitutional rights. Defendants rely on evidence outside of Plaintiff's amended complaint including medical and prison records to support their argument. Thus, this Court analyzes this portion of Defendants' motion also under the summary judgment standard.

For similar reasons as discussed regarding Defendants' arguments on the merits of Plaintiff's claims, in this case, and *under these particular circumstances*, this Court finds Defendants' argument on qualified immunity is also premature. *See, e.g.*, *Lasane v. Campos*, No. 17-6316, 2019 WL 959703, at *6 (D.N.J. Feb. 27, 2019) (citing *Newland v. Reehorst*, 328 F. App'x 788, 791 n.3 (3d Cir. 2009); *Coles v. Carlini*, No. 10-6132, 2012 WL 1079446, at *9

(D.N.J. Mar. 29, 2012)) ("Because any inquiry into qualified immunity is necessarily a fact-intensive inquiry, the Court declines to grant the Motion at this early stage, prior to discovery, on grounds of qualified immunity."). Defendants may of course re-raise their merits and/or qualified immunity arguments after Plaintiff is given an opportunity for discovery.

## V.     CONCLUSION

Defendants' motion to seal is granted. Defendants' motion to dismiss, or in the alternative for summary judgment, is denied without prejudice. An appropriate order will be entered.

DATED: June 3, 2022

s/ Robert B. Kugler
ROBERT B. KUGLER
United States District Judge